**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JUSTIN SETTLE,

      Petitioner,

vs.                                       Case No.:    3:12-cv-584-J-32PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

Petitioner initiated this action by filing a pro se Petition (Doc. 1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 11, 2012. On May 12, 2005, Petitioner pled guilty to two counts of first degree murder before a state court of Florida (Duval County). According to the plea colloquy, Petitioner shot two acquaintances twice in the head, shot and killed a dog, and stole money, drugs, jewelry, and a firearm from the victims. (State Ex. C at 34-37). Petitioner thereafter moved to withdraw the guilty plea, which the trial court denied on August 18, 2005. Petitioner now challenges the state court's judgment of conviction for two counts of first degree murder, for which he received two consecutive terms of life in prison. Petitioner contends that his guilty plea was unknowing and involuntary because he was mentally incompetent at the time he pled (ground one); that the trial court failed to ensure that Petitioner understood the charges and the elements of the charged offenses (ground two); that counsel rendered ineffective assistance (grounds three

1

through five, seven, and eight); that there was an insufficient factual basis for his guilty plea (ground six); and that the trial court failed to provide him an opportunity for allocution (ground nine).

Respondents contend that the Petition must be dismissed as untimely. <u>See</u> Response to Petition/Motion to Dismiss (Doc. 17) (Response). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Petitioner does not invoke the alternative trigger dates laid out in § 2244(d)(1)(B)-(D), so only § 2244(d)(1)(A) is relevant. The Court agrees that Petitioner's habeas petition is untimely.

On September 15, 2005, Petitioner filed a notice of appeal from the trial court's denial of the motion to withdraw his guilty plea. (See State Ex. A). On, January 10, 2006, the First District Court of Appeal dismissed Petitioner's direct appeal for failure to comply with court rules. (State Ex. D).[1] Petitioner's conviction and sentence became final on that date, because neither the Florida Supreme Court[2] nor the United States Supreme Court[3] had jurisdiction to entertain an appeal from the appellate court's summary dismissal on procedural grounds. Accordingly, January 10, 2006 marked "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), because no further review was available.[4]

---

[1] Petitioner did not petition the United States Supreme Court for certiorari review.

[2] Under Florida law, the Florida Supreme Court lacks jurisdiction to grant discretionary review where a district court of appeal denies or dismisses an appeal without a written opinion. Fla. Const. Art. V, § 3(b); Jenkins v. State, 385 So. 2d 1356, 1359 (Fla. 1980).

[3] "[A]n adequate and independent state procedural disposition strips [the Supreme] Court of certiorari jurisdiction to review a state court's judgment[.]" Dretke v. Haley, 541 U.S. 386, 392 (2004). The First District Court of Appeal dismissed Petitioner's case after he failed to respond to the court's letter regarding payment of the $300 filing fee (see State Ex. D). This was a dismissal on adequate and independent state procedural grounds, and thus the Supreme Court would not have had certiorari jurisdiction.

[4] Even if Petitioner's conviction and sentence did not become final until 90 days after the First DCA's dismissal – at the conclusion of the period for seeking certiorari review – it would not affect the timeliness analysis. That is because while direct review was still pending, Petitioner filed a motion for post-conviction relief in state

3

On November 18, 2005, while the direct appeal was still pending, Petitioner moved to vacate his judgment and sentence under Florida Rule of Criminal Procedure 3.850. (State Ex. G at 1-12). The trial court denied Petitioner's Rule 3.850 motion on the merits on October 24, 2006. (State Ex. G at 13-16). Petitioner had thirty days to appeal that order but did not do so.[5] AEDPA's one-year time limitation remained tolled through the expiration of the time for seeking appellate review, Cramer v. Sec'y, Dep't of Corrections, 461 F.3d 1380, 1383 (11th Cir. 2006), or November 23, 2006, and began running the following day, November 24, 2006.

Petitioner filed additional Rule 3.850 motions in August 2007 and December 2008, but these did not toll AEDPA's statute of limitations. The trial court dismissed each motion for being both untimely and successive. (State Ex. G at 78-80) (dismissing August 2007 motion to vacate); (State Ex. V at 293-95) (dismissing December 2008 motion to vacate). The First District Court of Appeal per curiam affirmed both dismissals without a written opinion. (State Ex. H), Settle v. State, 983 So. 2d 584 (Fla. 1st DCA 2008) (affirming dismissal of August 2007 motion); (State Ex. W), Settle v. State, 10 So. 3d 636 (Fla. 1st DCA 2009) (affirming dismissal of December 2008 motion). Because the state courts dismissed these subsequent motions to vacate for being untimely, they were not "properly filed" within the

---

court, which remained pending until October 2006, and so continued to toll AEDPA's statute of limitations under § 2244(d)(2).

[5] Under the Florida Rules of Criminal Procedure, an inmate has thirty days to appeal the trial court's order denying post-conviction relief. Fla. R. Crim. P. 3.850(k).

4

meaning of 28 U.S.C. § 2244(d)(2), and therefore did not toll AEDPA's statute of limitations. Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005).[6]

Thus, AEDPA's statute of limitations began running on November 24, 2006. The clock did not stop until 300 days later, when on September 20, 2007, Petitioner filed a motion for post-conviction relief (State Ex. K at 1-13), which the trial court construed as a Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (State Ex. K at 14-15). Petitioner also filed a second Rule 3.800 motion on December 23, 2007, while the first motion was still pending. (State Ex. O at 1-3). The trial court denied both motions (State Ex. K at 14-15; State Ex. O at 4-5), and the First District Court of Appeal affirmed the denial of the first and second Rule 3.800 motions on May 27, 2008 (State Ex. L) and October 21, 2008 (State Ex. S), respectively. The appellate court issued its mandate on the last of the

---

[6] On its own, the Court questions whether the state trial court correctly applied Rule 3.850(b)'s two-year statute of limitations in determining that Petitioner's second Rule 3.850 motion, filed in August 2007, was time-barred. In Florida, a prisoner has two years to file a Rule 3.850 motion running from the date on which the judgment and sentence become final. Fla. R. Crim. P. 3.850(b). The judgment and sentence do not become final until direct review proceedings have concluded. Valdes v. State, 904 So. 2d 515, 516 (Fla. 3d DCA 2005). Petitioner timely appealed the trial court's denial of his motion to withdraw the guilty plea, which remained pending until the First District Court of Appeal dismissed it in January 2006. Thus, according to Rule 3.850(b), he should have had until January 2008 to file a timely (even if successive) Rule 3.850 motion. The second Rule 3.850 motion, filed in August 2007, therefore does not appear to have been untimely.
 Nonetheless, it does not change the outcome in the instant case for two reasons. For one, Petitioner does not contend in the instant habeas petition that the state trial court incorrectly applied Rule 3.850(b)'s statute of limitations to his second Rule 3.850 motion, so the issue is forfeited. Second, even if this Court considered the second Rule 3.850 motion timely filed, such that it would toll AEDPA's statute of limitations, this habeas petition would still be untimely for the reasons discussed further in this Order.

5

Rule 3.800 motions on November 18, 2008 (State Ex. T), at which point AEDPA's statute of limitations resumed running with 65 days remaining.[7] (Response at 11). The one-year statute of limitations ran out 65 days later, on January 23, 2009. Petitioner did not file the instant habeas corpus petition until May 11, 2012, well after the time to file had expired.

Notably, even under Petitioner's best case scenario, in which the Court were to assume that the AEDPA clock was continuously tolled throughout the entirety of his appellate and post-conviction proceedings, the petition would still be time-barred. The First District Court of Appeal issued its mandate affirming the dismissal of the last of his state motions for post-conviction relief on June 23, 2009.[8] (State Ex. X). The AEDPA clock would have begun running, at the latest, on the following day, June 24, 2009.[9] The one-year statute of limitations provided by 28 U.S.C. § 2244(d) would have expired on June 24, 2010, yet Petitioner did not file his habeas petition until May 11, 2012 – roughly a year and eleven months afterward. Thus, Petitioner's habeas corpus petition is untimely under 28 U.S.C. § 2244(d)(1)(A).

---

[7]    If a petitioner appeals the trial court's denial of post-conviction relief, the application remains "pending," and thus the statute of limitations remains tolled, until the Florida appellate court issues the mandate. See Lawrence v. Florida, 549 U.S. 327, 332 (2007).

[8]    This mandate concerned the dismissal of Petitioner's third Rule 3.850 motion. Thus, the amount of time leading up to the mandate ordinarily would not toll AEDPA's statute of limitations because the third Rule 3.850 motion was untimely, and thus, not "properly filed." DiGuglielmo, 544 U.S. at 413.

[9]    For the reasons discussed above, supra at 3 n.2-3, further review was unavailable. Additionally, for tolling purposes, the Court does not consider whether certiorari review was available in the Supreme Court, because a petition for a writ of certiorari would not continue to toll the statute of limitations anyway. Lawrence, 549 U.S. at 332.

### A. Ground One is not time-barred, though it is without merit

Even though the habeas petition is untimely, Petitioner's claim that he pled guilty while mentally incompetent is not barred from federal habeas review. To be sure, the precise nature of Ground One is not entirely clear. Petitioner seems to contend that counsel was ineffective for not investigating his alleged incompetence (Doc. 1-1, Memorandum at 15 ¶¶ 35, 36), that the trial court erred in not conducting a competency hearing (id. at 15-16, ¶¶ 34, 36, 37), and that he was actually incompetent when he pled guilty (see e.g., id. at 11-12, ¶¶ 22-26). The lattermost contention is a substantive due process mental incompetency claim, and such claims cannot be procedurally defaulted. Lawrence v. Sec'y, Fla. Dep't of Corrections, 700 F.3d 464, 481 (11th Cir. 2012) (collecting cases).[10] Thus, Ground One is not barred, but only to the extent that it raises a substantive incompetency claim.

There is no opinion from a state court on the merits of Petitioner's substantive incompetency claim, because he did not raise the issue in either his motion to

---

[10] This Court is unaware of a case applying the Eleventh Circuit's unique exception for substantive incompetency claims to a circumstance where the habeas petition is untimely under the AEDPA statute of limitations. The exception has traditionally been applied where the substantive incompetency claim was procedurally defaulted in state court. See e.g., Lawrence, 700 F.3d at 481 (petitioner failed to present the claim in state court); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1258-59 (11th Cir. 2002) (applying exception where petitioner failed to raise the issue on direct appeal); Adams v. Wainwright, 764 F.2d 1356, 1359 (11th Cir. 1985) ("[T]he procedural default rule of Wainwright v. Sykes ... does not operate to preclude a defendant who failed to ... pursue a claim of competency on direct appeal from contesting his competency to stand trial and be sentenced through post-conviction proceedings"). Nonetheless, in an abundance of caution, the Court will assume that the exception also applies to petitions that are untimely under AEDPA's statute of limitations.

withdraw the guilty plea (see State Ex. C at 1-3), his first Rule 3.850 motion (see State Ex. G at 1-13), or his second Rule 3.850 motion (see State Ex. G at 65-77). Petitioner only raised the issue in his third Rule 3.850 motion (see State Ex. V at 14-26), which the trial court dismissed as untimely without addressing the merits (State Ex. V at 293-95). Thus, there is no state court opinion to which this Court owes "AEDPA deference" under 28 U.S.C. § 2254(d).

There is a "firmly established" substantive due process right not to be tried while mentally incompetent. James, 957 F.2d at 1569. "This incompetency claim invokes the Due Process Clause of the Fourteenth Amendment, which for some time has been interpreted as prohibiting states from trying and convicting a mentally incompetent defendant." Id. (citing Dusky v. United States, 362 U.S. 402 (1960)). The Supreme Court has set forth a two-pronged standard for determining legal competency: "[T]he test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. at 402. Petitioner "is entitled to no presumption of incompetency and must demonstrate his… incompetency by a preponderance of the evidence." James, 957 F.2d at 1571. "[I]n order to be an entitled to an evidentiary hearing on a substantive competency claim… a petitioner must present 'clear and convincing evidence' that creates a 'real, substantial, and legitimate doubt' as to his competence." Lawrence, 700 F.3d at 481 (quoting James, 957 F.2d at 1573). "The standard of proof is high. The facts must positively, unequivocally and clearly

8

generate the legitimate doubt." Card v. Singletary, 981 F.2d 481, 484 (11th Cir. 1992). "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) (internal quotation marks, brackets, and citations omitted).

The only evidence of incompetence to which Petitioner points are Clay County Sheriff's Office medical records from September and October 2000 – over four and a half years before he pled guilty in the instant case. (See Pet. Ex. K). The records reflect that Petitioner was experiencing symptoms of depression, bipolar disorder, post-traumatic stress disorder, and auditory hallucinations "of the command type," for which he was prescribed Zoloft and Seroquel. (Id.). The Clay County records coincide with, and are presumably in connection with, a Clay County case in which Petitioner was adjudicated guilty of armed burglary of an occupied dwelling.[11] Petitioner does not provide anything from the record of that case indicating he was found incompetent to proceed. However, Petitioner argues as follows:

> Taking into consideration, that the records presented in exhibit, K [sic] clearly show Petitioner to have been incompetent at the time of examination [in 2000], and that the state cannot produce any records from the pre-trial phase to contradict Petitioners [sic] claim of incompetence, the only reasonable determination is that Petitioners [sic] allegations are true, he was incompetent at plea colloquy [in 2005] and for a long period after, therefore… rendering his guilty plea void…

(Pet. Memorandum at 13, ¶ 28).

---

[11] The docket for the Clay County case, Case No. 101999CF001493XXAXMX, is available at http://pa.clayclerk.com/PublicAccess/CaseDetail.aspx?CaseID=1111445.

Even assuming the medical records prove that Petitioner was incompetent in 2000, Petitioner errs in believing that the same records would prove he was incompetent to plead guilty in May 2005. "The best evidence of [Petitioner's] mental state at the time of trial is the evidence of his behavior around that time, especially the evidence of how he related to and communicated with others then." <u>Wright v. Sec'y, Dep't of Corr.</u>, 278 F.3d 1245, 1259 (11th Cir. 2002). Petitioner has supplied no evidence that he was incompetent when he pled guilty on May 12, 2005. Rather, the Court has the benefit of the plea colloquy transcript, which reflects that Petitioner was alert and responsive to the trial judge's inquiries, that Petitioner was aware of the charges, and that Petitioner understood the proceedings, including his rights and the consequences of pleading guilty. (<u>See</u> State Ex. C at 18-48). The trial judge specifically asked Petitioner questions about his competency to change his plea:

> THE COURT: As you are standing here today are you currently or have you been within the last 24 hours under the influence of any alcohol, drug, medications, substance, or condition which might interfere with your understanding or appreciation of this plea and the consequences of it?
>
> DEFENDANT: No, sir.
>
> THE COURT: Do you have any physical or mental defects that might prevent you from understanding what's taking place at this time?
>
> DEFENDANT: No, sir.
>
> THE COURT: Counsel, are you aware of any mental health issues regarding your client?
>
> MR. CHIPPERFIELD: No, your honor.

| | |
|---|---|
| THE COURT: | Was a mental health background examination done? |
| MR. CHIPPERFIELD: | Yes, we have done that. |
| THE COURT: | And anything from that that needs to be brought to the attention of the court? |
| MR. CHIPPERFIELD: | No. I don't think anything from that would affect his ability to understand the consequences of his plea. |

(State Ex. C at 30-31). Petitioner himself did not voice concern that anything in his mental health background prevented him from understanding the ramifications of pleading guilty.

The Court also takes note of the pro se Motion to Withdraw Guilty Plea, which Petitioner filed less than a month after he pled guilty while allegedly incompetent. (See State Ex. C at 1-3). Two observations are relevant. First, despite Petitioner's contention that "he was incompetent at [the] plea colloquy and for a long period after," the pro se motion was comprehensible, legibly written, and coherently articulated grounds for withdrawal – even if it ultimately lacked merit. Such a pro se pleading undermines Petitioner's claim that, less than a month earlier, he was so mentally incompetent that he could not plead guilty. Second, Petitioner asserted that he pled guilty under coercion and duress, but he failed to mention anything about mental incompetency. Petitioner did not mention anything about incompetency until three years later, in December 2008, when he filed a third Rule 3.850 motion. Thus, the belatedness with which Petitioner raises the issue of mental incompetency makes this claim specious.

It is Petitioner's burden to prove that he lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," or that he lacked "a rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. at 402. However, Petitioner has failed to point to facts that "positively, unequivocally and clearly generate [a] legitimate doubt" about his competence at the time he pled guilty. Card, 981 F.2d at 484. Not only is there an absence of proof that Petitioner was unable to consult with his lawyer or comprehend the proceedings, but the record of the plea colloquy affirmatively shows that Petitioner was able to relate to those around him, communicate effectively, and grasp what was happening. Accordingly, Petitioner has failed to satisfy the Court that he pled guilty while mentally incompetent, and he is entitled to neither relief nor an evidentiary hearing on Ground One.

## B. Actual Innocence

For each of his remaining grounds, Petitioner argues that his tardiness ought to be excused because he is actually innocent. (See Petition at 7, 10, 15, 18, 22, 25, 29, 32). Ordinarily, claims that are late or procedurally defaulted are barred from federal habeas review. Nevertheless, a convincing showing of actual innocence will allow a petitioner to overcome having procedurally defaulted a claim and present it to a federal habeas court. Schlup v. Delo, 513 U.S. 298, 316 (1995). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found

petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup, 513 U.S. at 327).

In McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), the Supreme Court confirmed that the actual innocence exception applies to petitions that are late under AEDPA's statute of limitations. Id. at 1931-32. However, the Supreme Court cautioned "that tenable actual-innocence gateway pleas are rare[.]" Id. at 1928. Crossing the actual innocence threshold requires new reliable evidence not presented at trial that does "more than counterbalance the evidence that sustained the petitioner's conviction." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1016-17 (11th Cir. 2012). Rather, "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" McQuiggin, 133 S. Ct. at 1936 (quoting Schlup, 513 U.S. at 316).

In applying the actual innocence exception,

> [t]he habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.

Schlup, 513 U.S. at 328. Where, as here, a petitioner asserts actual innocence after having pled guilty, "the Government must be permitted to introduce any admissible evidence of Appellant's guilt, whether or not that evidence was presented in the plea colloquy, or even would have been offered before [the court's decision]." United States v. Montano, 398 F.3d 1276, 1285 (11th Cir. 2005) (citing Bousley v. United States,

13

523 U.S. 614, 623 (1998)).  Also of relevance to this case, when evaluating the credibility of an actual innocence claim, a court should consider the amount of delay in presenting new evidence.  McQuiggin, 133 S. Ct. at 1935-36.  As the Supreme Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of ... evidence [of actual innocence]." 513 U.S. at 332.

As a preliminary matter, the Court doubts that Petitioner's claim of actual innocence is compatible with what the record reflects was a knowing and voluntary guilty plea, Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1219 (11th Cir. 2000) (Dubina, J., concurring), especially since Petitioner alleges factual innocence as opposed to innocence based on new case law narrowing the elements of the offense to which he pled guilty, compare with Bousley, 523 U.S. 614 (movant claimed actual innocence after pleading guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1), but five years later the Supreme Court held that that § 924(c)(1)'s "use" prong requires the Government to show "active employment of the firearm."). "Moreover, it is troubling… that petitioner waited over five years after his conviction to file his federal habeas petition.  This delay is inconsistent with a claim of actual innocence." Wyzykowski, 226 F.3d at 1219 (Dubina, J., concurring).  Here specifically, Petitioner waited nearly seven years after he pled guilty, and more than three years after AEDPA's one-year statute of limitations had run out, to file his federal habeas petition.  Such delay is indeed inconsistent with a claim of actual innocence.  Id.; see also McQuiggin, 133 S. Ct. at 1935-36.

Additionally, Petitioner fails to point the Court to any "new" evidence that supports a finding of innocence. Petitioner mainly relies on five things to show his "innocence": Clay County Sheriff's Office medical records from September and October 2000, reflecting that he suffered from depression, PTSD, bipolar disorder, and auditory hallucinations (see Memorandum at 10-11, ¶¶ 15, 20); an affidavit from his mother, stating (unremarkably) that trial counsel recommended that she advise her son to accept the State's plea offer to avoid the death penalty (see Memorandum at 11, ¶¶ 18-20; Pet. Ex. M); law enforcement's and trial counsel's failure to investigate his brother, Bryan Stewart, as an alternative suspect (see Pet. at 18-22); an "alibi," where he claims to have been in a hotel in a "different city" at the time of the murder (id.)[12]; and some inconsistencies in certain witnesses' deposition statements (see Memorandum at 30-35, ¶¶ 77-90). None of these points represents "new" evidence in the sense that they were unknown or unavailable to Petitioner when he pled guilty. Rather, Petitioner either knew of this information, it was already on the record, or it was easily discoverable prior to pleading guilty. "To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. However, Petitioner has provided nothing of the sort.

---

[12]    Petitioner exaggerates his "alibi." The "different city" where this hotel was located is Orange Park, Florida. While technically a different municipality, it is a nearby suburb of Duval County, where the murders occurred.

Even if Petitioner's evidence qualified as "new evidence" of innocence, it would still have to be weighed along with the incriminating evidence to see whether, more likely than not, no reasonable juror would convict him beyond a reasonable doubt. Id. at 327. The State possessed considerable evidence of Petitioner's guilt. Police recovered from Petitioner items that were stolen from the victims; the ballistics matched the firearm that was in Petitioner's possession both before and shortly after the murder; and Petitioner admitted to his girlfriend that he had murdered the victims. (See State Ex. C at 34-37). Given the inculpating evidence, it is improbable that no reasonable juror would have convicted him beyond a reasonable doubt, even in light of the "new" evidence Petitioner presents.

Accordingly, Petitioner has failed to show that he satisfies the actual innocence exception. Because he has failed to show that he qualifies to pass through the actual innocence gateway, the remainder of the grounds in Petitioner's tardy habeas petition are time-barred absent a showing of equitable tolling.

**C. Equitable Tolling**

Petitioner does not raise equitable tolling as an excuse for his late filing, and therefore the Court need not consider it. Even if Petitioner had argued that he is entitled to equitable tolling, the Court would find he does not qualify.

"Equitable tolling is an extraordinary remedy and is applied sparingly," and the movant bears the burden of showing that equitable tolling is warranted. Outler v. United States, 485 F.3d 1273, 1280 (11th Cir. 2007). To be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights

16

diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quotation marks omitted).

Although Petitioner assiduously pursued post-conviction remedies in state court, he has not shown what he was doing to pursue his rights between June 23, 2009 – when the First District Court of Appeal issued its mandate on the last of his state post-conviction motions (see State Ex. X) – and May 2012 when he filed the instant habeas petition.  Petitioner also has not identified any extraordinary circumstance that prevented him from timely filing his habeas corpus petition within the one-year statute of limitations prescribed by 28 U.S.C. § 2244(d)(1).  Accordingly, Petitioner does not qualify for equitable tolling.

In sum, Petitioner has not shown an adequate reason why the dictates of the one-year limitation period should not be imposed upon him. Accordingly, this case will be dismissed with prejudice as untimely, and denied on the merits as to Ground One.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  Respondent's Motion to Dismiss (Doc. 17) is **GRANTED** except as to Ground One as discussed herein, which is denied on the merits.

2. The Petition (Doc. 1) is otherwise **DISMISSED** with prejudice as untimely.

3. The Clerk shall enter judgment denying the Petition and dismissing this case with prejudice.

4. If Petitioner appeals the dismissal of the Petition, the Court denies a certificate of appealability.[13]  Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

5. The Clerk shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of September, 2015.

*/s/ Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

Lc 19

Copies:

Pro se party
Counsel of record

---

[13]   If Petitioner appeals the dismissal of the Petition, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller–El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Here, after consideration of the record as a whole, this Court will deny a certificate of appealability.

18